UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                    18-cr-259 (PKC)

              -against-

                                                    ORDER

MARKO STASIV,

                            Defendant.
--------------------------------------------------------------x

CASTEL, U.S.D.J.:

        Defendant Marko Stasiv has filed a motion for a sentence reduction pursuant to

the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A), asserting "extraordinary and compelling

reasons" related to the COVID-19 pandemic.  (Doc 311).  Stasiv seeks to be placed in home

confinement for the remainder of his sentence.  (Doc 324).  The government has opposed his

application.  (Doc 317).

        The Court previously denied Stasiv's motion without prejudice for failure to

exhaust his Bureau of Prisons ("BOP") remedies.  (Doc 299).  Stasiv submitted a request for

early release to the BOP on April 13, 2020, which was denied by the warden of MDC Brooklyn

on May 4, 2020.  (Doc 311-1).  He then filed the instant application for compassionate release on

June 12, 2020.  The government acknowledges that Stasiv has now satisfied the statutory

exhaustion requirement.  (Doc 317 at 4).

        However, the government correctly points out that because Stasiv has a pending

appeal in the Court of Appeals challenging his conviction and sentence, the Court lacks

jurisdiction to modify the sentence under section 3582(c)(1).  Griggs v. Provident Consumer

Discount Co., 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); U.S. v. Ransom, 866 F.2d 574, 575 (2d Cir. 1989) (noting that this "rule applies in criminal cases").

Rule 37(a), Fed. R. Crim. P. provides in the relevant part that "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."  The Advisory Committee Notes "anticipate[] that Criminal Rule 37 will be used primarily if not exclusively" for three types of motions including those made under 18 U.S.C. § 3582(c).  Rule 37, Fed R. Crim. P. advisory committee's note (2011 amd.); see also United States v. Skelos, No. 15-cr-317 (KMW), 2020 WL 2508739, at *2 (S.D.N.Y. May 15, 2020) (denying compassionate release motion pursuant to Rule 37 where defendant filed a notice of appeal from his sentence and judgment); United States v. Martin, No. 18-cr-834 (PAE), 2020 WL 1819961 (S.D.N.Y. Apr. 10, 2020) (same).

For reasons that will be explained, the Court states that it would deny Stasiv's motion on the merits if jurisdiction were restored to the district court.

DISCUSSION

Section 3582(c)(1)(A) of title 18 provides that "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," a court may reduce such defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a

reduction."  18 U.S.C.§ 3582(c)(1)(A)(i).[1]

   Under section 3582(c)(1), district courts are permitted "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release."  United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020) ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.").  The Court must also consider the "factors set forth in section 3553(a) to the extent they are applicable . . . ."  18 U.S.C. § 3582(c)(1)(A).

   Stasiv is 33 years old and has asthma but according to his Presentence Report ("PSR") is otherwise in good health.  (PSR ¶¶ 94–97).  BOP medical records also show that he has hypertension.  (Doc. 317-1 at 1).  These records indicate that Stasiv had recent medical evaluations on September 4, 2020 and August 10, 2020.  Stasiv's asthma is currently treated with an albuterol inhaler and his hypertension with amlodipine.  (Id. at 4).  At his August evaluation, Stasiv "[d]enie[d] any recent Asthma attack, denies wheezing, denies any cough" and stated that he "uses MDI [inhaler] about 5 times a week."  (Id. at 5).  His BOP medical records also do not indicate any hospitalizations that resulted from an asthma attack.  The medical care received by Stasiv while incarcerated has not been shown to be inadequate.

   Current CDC guidance states that adults with asthma and hypertension "might be at an increased risk for severe illness from COVID-19."[2]  Both asthma and hypertension are

---

[1] Section 3582(c)(1)(A) also requires consideration of whether a sentence reduction is "consistent with the applicable policy statements issued by the Sentencing Commission."  The Second Circuit "recently held that United States Sentencing Guideline § 1B1.13—the policy statement 'applicable' to compassionate-release motions brought by the Director of the Bureau of Prisons—is not 'applicable' to compassionate-release motions brought by incarcerated defendants."  United States v. Roney, 2020 WL 6387844, at *3 n.1 (2d Cir. Nov. 2, 2020) (citing United States v. Brooker, 976 F.3d 228, 235–36 (2d Cir. 2020)).

[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#serious-heart-conditions (last accessed Dec. 8, 2020).

classified by the CDC as having "mixed evidence" of increased risk, which is "[d]efined as multiple studies that reach different conclusions about the risk associated with a condition."[3]  For purposes of this motion, the Court will assume that Stasiv, at age 33 and with the above-described conditions, is at elevated risk of serious illness or death if he were to be infected by the COVID-19 virus.

The Court recognizes that individuals with pre-conditions such as asthma and hypertension are at a heightened risk of serious consequences from the virus, if infected, whether they are at liberty or imprisoned.  A person who is at liberty, however, has an arguably greater ability to avoid infection because of his freedom to quarantine, social distance or utilize personal protective equipment as he chooses, options that are not always available to a person who is incarcerated.  The Court also acknowledges that a person at liberty has the freedom to select a medical provider of his choosing in the event he contracts the virus and this, again, an incarcerated person does not have the same option.

Stasiv is currently housed at CI Giles W. Dalby ("Dalby"), a BOP contracted facility that is operated by a private corporation and located in Texas.[4]  Based on the available data, the number of new cases of the virus at Dalby is at a manageable level.[5]  The BOP website reports 1 confirmed active cases among inmates at Dalby and 0 reported cases for staff.[6]  That

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (last accessed Dec. 8, 2020).
[4] Stasiv was transferred to Dalby from MDC Brooklyn after his compassionate release application was filed.  (Doc. 324).
[5] In August 2020, the Department of Justice Office of Inspector General released a report of its inspection of Dalby. Pandemic Response Report, DOJ OIG (Aug. 2020), https://oig.justice.gov/sites/default/files/reports/20-096.pdf (last accessed Dec. 8, 2020).  As of August 4th, 83 Dalby inmates had tested positive out of a total population of 1,439 inmates, and 1 inmate had died.  Id. at iii.  The OIG report "found that Dalby implemented strategies outlined in the BOP's technical directions and CDC guidance but note[d] that the BOP did not always issue technical directions to contract prisons at the same time it issued comparable guidance to BOP-managed institutions between January and April 2020. For Dalby, given the limited community and lack of institution spread at that time, the delays we discuss below did not appear to have a material effect on its ability to mitigate the spread of COVID-19 during that time." Id. at 1 (footnote omitted).
[6] https://www.bop.gov/coronavirus/ (last accessed Dec. 8, 2020).

other BOP facilities in other locations or the area in Texas surrounding the facility have experienced higher numbers of COVID-19 cases does not point to an unreasonably high risk at this facility.

Application of relevant section 3553(a) factors counsel against a grant of sentence reduction.  Stasiv was found guilty at trial of conspiracy to commit bank fraud and wire fraud (Count I); wire fraud affecting a financial institution (Count 2); and aggravated identity theft (Count 5).  (Doc 261).  The trial evidence convincingly demonstrated that Stasiv participated in a scheme to defraud banks and check cashing stores.  The scheme participants created a seemingly legitimate (but in reality a sham) business in a designated location, posed as employees of the business, created bank accounts associated with the business, and cashed payroll checks at cash checking stores in ever-increasing amounts over the span of many weeks to build credibility with the stores.  (Sentencing Tr. 37–38; Doc. 278).  These checks were drawn on the bank accounts associated with the sham employers and would clear until the final week of the scheme (the "bomb week").  (Id. at 38).  During the bomb week, scheme participants would present larger checks at the check cashing stores, which the stores would cash and which would then bounce when deposited through the bank clearing system.  The participants would split the profits, move on to the next designated location, and repeat the scheme with new victims.  (Id.).  While executing this scheme, participants would stay in hotel rooms obtained by using the hotel rewards points of unsuspecting rewards program members without authorization.  (PSR ¶ 43).  Stasiv was one of two team leaders who organized and directed other members of his team in the process of opening bank accounts and cashing checks at check cashing stores.  (Sentencing Tr. at 37).

Stasiv faced a guidelines range of 102 to 121 months imprisonment.  (Sentencing

Tr. at 41–42).  Despite the seriousness of the offense, the Court sentenced Stasiv to a below guidelines sentence of principally 84 months' imprisonment.  (Id. at 43).  The Court stated that "[t]his crime is deserving of punishment.  There were real people who lost money.  There were business owners who took the stand here and they suffered the losses.  The notion that there were no losses, that this money comes out of the air, is nonsense."  (Id. at 40–41).  The Court further observed that Stasiv's intelligence, organizational skills, and leadership ability was part of "how this scheme worked."  (Id. at 39).

Stasiv has served about 34 months of his 84-month below guidelines sentence. He has been in custody since his arrest on February 27, 2018.  (PSR at 2).  According to the BOP website, Stasiv's anticipated release date accounting for good time-credit is February 14, 2024.[7] By any measure, Stasiv has served less than 50% of his sentence.  Reducing his sentence is unwarranted on this record and at this time.

CONCLUSION

The Court has considered the time Stasiv has served in prison to date, his medical conditions, including asthma and hypertension, conditions at his BOP facility, the ongoing COVID-19 pandemic and all other factors cited to the Court.  Taking into account all arguments presented by Stasiv in favor of a sentence reduction and considering them both in isolation and in combination, and considering all of the section 3553(a) factors, the Court issues the following indicative ruling of how it would rule if jurisdiction were restored to this Court: Stasiv has not demonstrated extraordinary and compelling reasons for a reduction in his sentence and his motion would be DENIED without prejudice.  The Clerk is directed to terminate the motion. (Docs 311 & 324).

---

[7] See https://www.bop.gov/inmateloc/ (last accessed Dec. 8, 2020).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       December 8, 2020